IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| C & A, S.E., | : | Case No. 05-5297 (GAC) |
| | : | |
| Debtor | : | Chapter 11 |
| _____ | : | |
| | : | |
| C & A, S.E., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. No. 05-00234 |
| | : | |
| RIO MAR NORTH ZONE | : | |
| DEVELOPMENT CORP., | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

DECISION AND ORDER

The debtor filed this adversary proceeding against Rio Mar North Zone Development Corporation ("North Zone") seeking damages for breach of a construction contract. The debtor claims the amount of $920,000.00 for monies retained under the contract, $950,000.00 for claims made against the debtor by service and material suppliers as a consequence of change orders and unspecified damages in the amount of $1,000,000.00, for a total of $2,870,000.00. North Zone filed a counterclaim alleging that the debtor breached the contract, by failing to complete the project and that the debtor's abandonment caused North Zone damages in the amount of $2,849,541.44, including direct costs, liquidated damages, construction taxes and additional inspection costs. North Zone subsequently received the sum of $1,250,000.00 from the surety

company and thus limits the damages claim to $1,599,541.44.

Three witnesses testified on behalf of the debtor, including the operation's manager for the project, the project engineer and the President of the debtor corporation, related to the extensive change orders and the delays in the project and as to North Zone's unwillingness to release retainage funds to allow the debtor to complete the project. Two witnesses, the developer and the project inspector, testified on behalf of North Zone regarding the nature and extent of the project, the debtor's obligations and performance, the debtor's alleged default and abandonment of the project and the expenses incurred by North Zone to complete the project.

After hearing the extensive testimony and after reviewing more than 700 pages of transcripts and exhibits of an even more voluminous nature, the Court concludes that both the debtor and North Zone suffered damages under the contract. However, based on the evidence submitted, the Court cannot conclude that either party caused the damages suffered by the other. The Court cannot conclude that it is more likely than not that either side is responsible for the financial loss suffered by the other. Accordingly, for the reasons set forth below, the Court will enter judgment in favor of North Zone on the debtor's complaint and judgment in favor of the debtor on North Zone's counterclaim.

BACKGROUND

On January 24, 2000, the debtor entered into a lump sum contract, in the amount of $20,373,490.00, with North Zone to construct two apartment complexes or "clusters" and a parking lot in Rio Grande, Puerto Rico.  The contract term was 547 days, with an expected completion date of July 24, 2001.  Pursuant to the terms of the contract, North Zone was responsible for the adequacy of the construction documents, while the debtor had the obligation to furnish all labor, equipment, material and services for the total construction of the project.  Subsequent to the commencement of the work, the construction plans were modified and changed through numerous change orders.  In total, there were seventy-three change orders, with some being additive and causing additional work and others being deductive and decreasing the required work.  The project completion date was extended from 547 days to 1,710 days and the cost of the project increased.

On August 31, 2004, the debtor sent a letter to North Zone informing it of the debtor's interest in finishing the project, but indicating that the extension of the contract and the change orders resulted in an additional cost to debtor of $2,600,000.00.  In the letter, the debtor contended that North Zone had abandoned the original contract.  The debtor sought an advance of $496,925.00 to conclude the project.  Notwithstanding that North Zone advanced monies to the debtor on two previous occasions in order to finish

3

the construction, on September 1, 2004, North Zone sent a letter to the debtor declining the proposal and ordering the debtor to leave the project on September 7, 2004, indicating that North Zone would take over the project on September 8, 2004. North Zone ultimately completed the project in December of 2005 at an approximate cost of $25,000,000.00.

DISCUSSION

The leading case in Puerto Rico on the contractual rights of parties pursuant to a construction contract is Levy, Hijo, Inc. v. Public Buildings Authority, 1994 JTS 32, 135 D.P.R. 382, 1996 WL 724959 (P.R.), 1996 P.R.-Eng. 724,959 (publication page references are not available for the English translation of this document). In Levy, the Supreme Court of Puerto Rico attempted to harmonize the authority of the owner of a construction project to issue change orders, granted by a contractual clause, with the rights of the contractor. The Court determined that delays in the time originally agreed upon in these types of projects are common and that they should be anticipated. Yet, the Court also determined that a general contractor is entitled to delay damages when the owner orders excessive or an unreasonable number of change orders, beyond those contemplated in the contract. The Court opined that a contractor should be compensated for industrial overhead and profit for unforeseeable work and for the unforseen major costs of planned works. Likewise, damages can be awarded to a contractor if

the delay in the project caused by the owner exceed normal construction industry practices.

A contractor's right to indemnification results from obstruction of the contractor's performance with extraordinary delays, which disrupt the contractor's work, constituting a breach of contract.  The Court also indicated that a construction contract can be annulled or revised by the Court.  The Court concluded that the intention of the parties must be considered taking into account the contract, the parties actions, their expertise and industry practices.

In Levy, an expert witness testified as to the normal length of construction delay in the building of regional hospitals and opined that a 45% delay was foreseeable based on change orders and work stoppage orders.  The Court considered this testimony and concluded that each case has its own peculiarities and must be resolved individually.  Nonetheless, the Court concluded that nothing bars the parties from contractually stipulating to avoid judicial adjudication.

In summary, the Court in Levy held that a contractor is entitled to recover from the owner, the additional costs associated with change orders, that exceed the completion date beyond a reasonable period of time.  The contractor is also entitled to have the delivery date extended for a reasonable period of time, in spite of a contractual clause providing that "time is of the

essence." The owner is not liable for the indirect costs incurred by the contractor for the reasonable time delay in delivery resulting from change orders. The reasonableness of the time delay and the forseeability of the delay depends on the nature and complexity of the work and the prevailing practice in the construction industry.

In the present case, the debtor alleges that the change orders and time delays were due to design errors and/or delay in the decision making process and that the change orders interrupted the sequence of construction. And while the debtor argued that the completion date was unreasonably extended based on excessive change orders, the debtor failed to produce evidence as to the reasonableness of the time delay, except testimony that it was unreasonable. The project engineer testified that he had never participated in a project in which the completion date was tripled and that generally the contract would be in default before the project completion date was tripled. While the parties agree that the completion date was extended from 547 days to 1,710, the debtor failed to present expert testimony to address the forseeability of the delay, as it related to the nature and complexity of the work and the prevailing practice in the construction industry.

North Zone, on the other hand, offered testimony demonstrating that many of the change orders were anticipated by the debtor before it began work on the project. The Court concludes that the

debtor was aware of errors and omissions in the construction documents before it began construction. Prior to commencing work, the debtor was also aware that a cluster had to be relocated. One of the initial problems encountered in relocating the cluster ten to twelve feet back, with an elevation forty-two feet above that of the initial plans, was that of encountering rock. This was not foreseeable by either party based on the geological survey and soil samples and it served to paralyze the construction. This concealed condition was covered by Article 13.1.7 of the General Conditions of the Contract for the Construction of Public Works, accepted by the parties, which provided that:

> [s]hould concealed conditions encountered in the performance of the Work below the surface of the ground be at variance with the conditions indicated by the Contract Documents or should unknown physical conditions below the surface of the ground of an unusual nature, differing materially from those ordinary encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions.

Thirty-one of the change orders related to the differing site conditions in the new location. There were also significant problems with a concrete subcontractor, which cannot be attributed to North Zone. Thus, the Court concludes that numerous change orders were anticipated and foreseeable before construction began and others do not make North Zone liable to the debtor.

In spite of the extensive change orders and time delays, the

parties continued under the contract, rather than renegotiate.  The parties had worked together on previous occasions, the principals of the two corporations were childhood friends, and both had expertise in the construction industry.  The course of dealing between the parties was to continue operating under the contract and to execute the change orders as provided for under the contract.

Article 13 of the General Conditions of the Contract for the Construction of Public Works, provided for change orders, which add, delete, alter or revise the contract.  The financial agreements pertaining to the change orders were agreed to in accordance with Article 13.  Pursuant to Article 13.2, claims for additional costs were not valid unless made in writing within twenty days after the occurrence of the event giving rise to such claim.  And while the parties did not always follow the process established for change orders, since sometimes work was performed and approved later, all the change orders were negotiated and accepted.

Pursuant to the General Conditions of the Construction Agreement itself, change orders were computed in strict accordance to direct construction costs, exclusive of all indirect costs; plus a 10% addition for overhead and profit.  All terms were approved by both parties.  And the Supplementary General Conditions of the Contract for the Construction of Public Works provided that the

acceptance of a change order by the contractor, relieved North Zone from all claims related to or as a consequence of the change order. Therefore, because the debtor was compensated for all of the change orders, pursuant to their terms, the debtor is unable to make further claims against North Zone for the change orders.

While the debtor contends that the numerous change orders constituted a breach of the construction contract and that it suffered damages as a result of the change orders, it appears that numerous change orders were produced and approved at the request of the debtor and the debtor was paid for the change orders that caused additional work to be performed. Other change orders were deductive and required less work to be performed, or simplified the job. If the debtor suffered damages as a result of the change orders, it was because the amounts agreed to in the change orders were not sufficient to compensate the debtor for what it agreed to undertake.

The Court concludes that the intention of the parties, based on the contract, their actions and their expertise, was to treat the contract as if it were in full force, until the debtor indicated that it would be unable to continue without further draws from the retainage.

The Court notes that while North Zone had previously allowed the debtor to draw from the retainage with the approval of the surety, pursuant to the Supplementary General Conditions of the

Contract, North Zone was not obligated to release retainage.  The supplementary conditions provide that the owner "may" release retainage, which the Court concludes is permissive.  With respect to the retainage held by North Zone, Article 10 of the General Conditions of the Contract for the Construction of Public Works, in dealing both with progress payments (Article 10.3) and substantial completion (Article 10.7), permitted North Zone to withhold the retainage until all payrolls, bills for materials and equipment and other indebtedness connected with the project were paid and the consent of the surety was obtained.  North Zone ultimately used the retainage toward the completion of the project; a right that it reserved in the contract.

North Zone also maintained the right to stop the work. Pursuant to Section 4.3 of the General Conditions of the Contract for the Construction of Public Works, accepted by the parties, the owner retained the right to stop the work for any reason deemed necessary to insure the proper execution of the contract.  Clearly, the debtor was having financial difficulties and while it expressed the desire to continue, it was unable to perform without additional payment from the retainage.

The Court was not placed in a position to determine the point at which the number of change orders and the time delay became unreasonable or the point at which they became unforeseeable.  Yet, it appears to the Court, based on the recognized inadequacy of the

10

initial construction documents, that the debtor was justified in leaving the project. Pursuant to Article 9.4 of the General Conditions of the Contract for the Construction of Public Works, the owner could seek to collect liquidated damages from the contractor if it neglected to carry out the work, after notice to the contractor and the surety. While the debtor continued under the contract, the Court concludes that it was not obligated to continue. North Zone appeared to have recognized this when it failed to request damages or give notice to the debtor that it would seek to collect from it for failing to complete the project. Based on the sheer number of change orders and the extreme delay in the project, the Court concludes that the debtor was justified in stopping the work. Accordingly, no damages will be awarded to North Zone.

<u>ORDER</u>

WHEREFORE IT IS ORDERED that judgment be entered in favor of Rio Mar North Zone Development Corp. on C & A, S.E.'s complaint and that judgment be entered in favor of C & A, S.E. on Rio Mar North Zone Development Corp.'s counterclaim.

SO ORDERED.

San Juan, Puerto Rico, this 8th day of October, 2008.

s/ Gerardo A. Carlo

_____
GERARDO A. CARLO
Chief, U.S. Bankruptcy Judge

11